CHOUTEAU, HARRISON & VALLE, Appellants, *v.* O. D. FILLEY, Respondent.

1. *Agency — Authority of agent limited to the particular sphere of his employment.*—An agent authorized in the name of his principal, in connection with the particular business in which his agency was employed, to indorse drafts for collection and deposit on account of such business, or to indorse any draft drawn in favor of his principal in connection with that business, but who is not an unlimited agent, has no authority to indorse a draft not connected with said business, without the knowledge of his principal; and where the proceeds did not come into the hands of his principal, but passed to another party, the principal cannot be held responsible for such proceeds.

*Appeal from St. Louis Circuit Court.*

*Lackland, Martin & Martin,* for appellants.

I. The court may grant any relief consistent with the case made by the evidence and embraced within the issues. The plaintiff's relief must be determined by the facts alleged and proven, and it makes no difference by what name soever he may designate his cause of action. (Ashley v. Winston, 26 Mo. 213; Northcroft v. Martin, 28 Mo. 469; Easly v. Prewitt, 37 Mo. 361.) The practice act provides that in the construction of pleading, for the purpose of determining its effect, its allegations shall be liberally constructed with a view to substantial justice. (Wagn. Stat. 1019, §§ 37, 39.) If the facts alleged and proven constitute a cause of action for money had and received, or for money paid, laid out and expended, or for any other legal cause of action, plaintiff is entitled to recover. See cases above cited.

Chouteau et al. v. Filley.

II. Actual knowledge on the part of defendant is not necessary to render him liable. Nor is it necessary that defendant should have been actually benefited materially. (Sto. Agency, §§ 126, 128, 133, 135, 224.) A bill of exchange or a negotiable note, given in satisfaction of a debt, will support a count for money paid. (Pearson v. Parker, 3 N. H. 366; Cummings v. Hackley, 8 Johns. 202; Lapham v. Barnes, 2 Verm. 213; Cornwall v. Gould, 4 Pick. 447; Douglass v. Moody, 9 Mass. 553; Peters Barnhill, 1 Hill, 234, 236, note; Wetherby v. Mann, 11 Johns. 518; McLellan v. Crofton, 6 Greenl. 333; Ingalls v. Dennett, *id*. 80; Clark v. Foxcroft, 7 Greenl. 355; Dole v. Hayden, 1 Greenl. 152.) *Assumpsit* for money had and received is a liberal equitable action, and lies wherever, by the ties of natural justice and equity, no rule, policy or strict law intervening to prevent, the defendant ought to refund the plaintiff's money, and cannot with good conscience retain it. (Irvine v. Hanlin, 10 Serg. & R. 219; Bogart v. Nevins, 6 Serg. & R. 369; Morris v. Tarin, 1 Dall. 148; Barr v. Craig, 2 Dall. 154; Murphy v. Barron, 1 Harr. & Gill, 258; Wiseman v. Lyman, 7 Mass. 288; Wright v. Butler, 6 Wend. 290; Eddy v. Smith, 13 Wend. 488; Guthrie v. Hyatt, 1 Harrington, 447; Farmers' Bank v. Brown, *id*. 330; Tevis v. Brown, 3 J. J. Marsh. 175.) There need be no privity of contract between the parties in order to support the action, except that which results from one man's having another's money which he has no right conscientiously to retain. (Mason v. Waite, 17 Mass. 563; Hall v. Marston, *id*. 579; Eagle Bank v. Smith, 5 Conn. 71; Dickson v. Cunningham, Mart. & Yerg. 221.) But negotiable notes received by defendant are often regarded as money. (Floyd v. Day, 3 Mass. 405; Hemmenway v. Bradford, 14 Mass. 122; Willie v. Green, 2 N. H. 333; Clark v. Pinny, 6 Cow. 297.) Bank notes and any other property received as money will support the action as if money itself had been received. (Mason v. Waite, 17 Mass. 560; Ainslee v. Wilson, 7 Cow. 662; Arms v. Ashley, 4 Pick. 74; Thompson v. Babcock, Bryant, 24.) The action for money had and received will lie where money has been received by mistake of facts or without consideration, or where the consideration

has failed. (McQueen v. State Bank of Indiana, 2 Carter, Ind., 413.) In general it may be maintained wherever the evidence shows that the defendant has received or obtained possession o money belonging to plaintiff which he ought in equity and good conscience to refund to him. (Lockwood v. Kelser, 4 N. H. 185.)

*Sharp & Broadhead*, for respondent.

I. It is not claimed by the plaintiff that there is any liability of defendant on the paper or draft offered in evidence, either as drawer, indorser or acceptor; but that there was a loan of money by plaintiff to defendant, at his request and for his benefit and accommodation. It is not pretended that Filley, the defendant, or his agent Roberts, ever requested plaintiff to draw the check or to hand it to How, or that he ever agreed to indorse for How, or to become security for him to the plaintiff. Plaintiff drew the check and handed it to How, for what purpose it does not appear; nor does it appear that How was in any sense agent for defendant, or even that How requested plaintiff to draw the check in that way, or that he requested him to draw it at all. How evidently intended to get the money on it. Filley was not indebted to plaintiff, so that the check in question was not drawn to pay any such debt. The only ground upon which plaintiff can pretend to maintain this action is that plaintiff authorized Filley to draw the money by making the check payable to his order; that Filley then took the check, and, instead of drawing the money himself, indorsed it and delivered it to How, and thereby authorized How to draw it. And this brings up the question whether the indorsement of Roberts was the indorsement of Filley; in other words, whether Roberts was authorized to indorse and deliver the paper to How. If this was the transaction, and if Roberts so understood it — that is, that How was to get the money on the check as if it came from Filley — it is strange that he as Filley's agent took no receipt or note, or obligation of any kind, from How. But the evidence shows that Roberts was not authorized to make any such indorsement for Filley. Filley was engaged in the mercantile business, selling goods. Roberts was in the habit of indorsing checks for collec-

tion or for deposit; never did indorse for the accommodation of any one; never signed a note or other paper by which Filley was bound to any one for the payment of money. The principal will be bound for the acts of his agent within the scope of the general authority conferred on him. (Sto. Agency, 115, § 126; Withington v. Herring, 5 Bing. 442.) The scope of the general authority in this case did not authorize the indorsement or signing of paper for. accommodation, or to give notes or obligations for borrowed money. The authority of a general agent is confined strictly to the business in which he is engaged.

II. But this is not a suit on the paper. The plaintiff has trusted nothing to the act of Roberts as agent. The plaintiff was not deceived by the act of Roberts. It did not deal with Roberts in the transaction at all, and Filley knew nothing of Roberts' act in indorsing the paper; he accepted no benefit from it. Roberts was certainly not authorized to give away Filley.'s money to any one who might come along. Suppose he had taken the check and indorsed it, he certainly was not authorized within the scope of his agency to hand the money over to How; and if he was not,. what authority had he to hand the check over to How after indorsing it, so as to enable him to get the money on it? If it be true that Roberts was authorized to indorse checks payable to Filley's order, he certainly was not authorized to give them away when he got nothing for them, any more than he could, under his authority as general agent, give away all the goods in the establishment.

ADAMS, Judge, delivered the opinion of the court.

The evidence in this case conduced to prove the following facts: That the defendant was a merchant in St. Louis, engaged in the tin business, and had been in this business for some twenty years; that L. D. Roberts was his clerk, authorized to do any act in the name of the defendant in connection with this business, and was duly authorized as such to receive and indorse drafts for collection and deposit on account of such business; and any draft drawn in favor of the defendant on account of this business the said Roberts was authorized to indorse by signing the defendant's name on the back of the same by himself, as agent.

The evidence conduced to show that John How, without the consent of defendant and without his knowledge, obtained from the plaintiffs their draft payable to defendant, in these words:

"OFFICE OF CHOUTEAU, HARRISON & VALLE,
"ST. LOUIS, April 17, 1869.

"No. 364. State Savings Association pay to O. D. Filley fifteen hundred dollars. $1,500 cy. JOHN BOGGS, Sec'y."

That How took this draft to the business house of defendant, on Main street, and not finding the defendant there, handed it to Roberts, who, without defendant's knowledge or consent, indorsed it "O. D. Filley, per Roberts," and handed it back to John How, who thereupon obtained the money upon it. The plaintiff did not owe defendant anything at the time. The draft was drawn by the plaintiff as a mere matter of accommodation, without the knowledge or consent of defendant, and the proceeds of the draft did not go to the defendant or into his business, but went into the hands of How, who procured the draft as above stated from plaintiff.

This action was brought for the $1,500 and the interest, as for money loaned or advanced by the plaintiff to defendant. Judgment was given for the defendant, and the plaintiff appealed to the General Term, and the judgment being affirmed, the plaintiff has brought his case here by appeal.

The plaintiff asked several instructions, which were refused, based upon the presumption that the evidence conduced to show that Roberts, as defendant's clerk, had authority to indorse this particular draft. The defendant asked counter-instructions, which were given by the court.

The only question presented by the record is whether there was any evidence to warrant the presumption that Roberts had authority to indorse this draft. The draft had no connection whatever with the defendant's tin business. It must have been intended by the plaintiff as a loan to defendant for the benefit of How, or to be reloaned by defendant to How. But the defendant had no knowledge or information whatever of the transaction, and never gave his consent to it; nor did he ever ratify it in any manner. So the question occurs, did Roberts have authority to borrow money in the name of defendant for the purpose of loaning it

out? Could he, under his general authority to transact all business connected with the tin establishment, indorse such a draft so as to make his employer responsible for the alleged loan? Roberts was the general agent of the defendant within the sphere of his employment, but he was not an unlimited agent. His agency was limited to matters connected with the tin business. He could not indorse such a draft, so as to bind his employer without his consent, for the return of money which did not go into the tin business and was not intended to be put there.

We see no error in the rulings of the Circuit Court. Judgment affirmed. The other judges concur.